UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ARLENE BARBAGALLO, Individually, and
as Administrator of the Estate of
EUGENE BARBAGALLO, deceased,

                     Plaintiff,                              03 CV 7480 (CLB)

      - against -                     *Memorandum and Order*

THE COUNTY OF WESTCHESTER, THE
WESTCHESTER COUNTY HEALTH
CARE CORPORATION, ROCCO A. POZZI,
as Commissioner of the Westchester County
Department of Corrections, ROSE M.
DIERCKSEN, M. KHAN, LAWRENCE E.
LEVY, SELWYN O. JUTER, ALISON
MASTRANGELO, EDWARD ODURO
KWAKYE, JULIUS NWOSU, and FRED D.
GAINES, JR.,

                     Defendants.
-------------------------------------------------------x

Brieant, J.

      Before this Court are the two motions for summary judgment (Doc. Nos. 35 & 51) and a motion to dismiss (Doc. No. 48). They were fully submitted on November 18, 2005. Defendants Dr. Lawrence E. Levy, Dr. Selwyn O. Juter, and Julius Nwosu, a physician's assistant, are the only movants. They are also the principal actors whose claims are a basis for federal jurisdiction.

      In this civil rights action under 42 U.S.C. § 1983, Plaintiff contends that while her son, Eugene Barbagallo, was detained at the Westchester County Jail from June 22 through June 30,

1

2002, Defendants demonstrated deliberate indifference to her son's serious medical needs, resulting in his death.

Mr. Barbagallo had a long history of depression, anxiety disorder, bipolar disorder, and suicidal ideation or tendencies, and had been prescribed Xanax for anxiety. Mr. Barbagallo had also sustained a severe work related injury to his back. For pain management, following back surgery in 2000, he was wearing a Duragesic patch, the active ingredient of which is a strong opioid analgesic. He was also prescribed Percocet, the principal ingredient of which is Oxycodone, a semisynthetic narcotic analgesic, as needed for pain relief. His medications at the time of his arrest also included the muscle relaxant Zanaflex.

On June 21, 2002, Mr. Barbagallo became highly agitated and lost his self-control after he was involved in a motor vehicle accident that caused damage to his prized automobile. His mother summoned the police. After a standoff, he was arrested at his mother's home on charges of criminal possession of a handgun in the third degree. He was taken immediately to the Westchester County Jail. Upon his admission, security staff observed significant abnormal behavior by Mr. Barbagallo and screened him for suicide prevention. The medical department was notified and Mr. Barbagallo was seen by medical staff. Defendant Rose M. Diercksen, a Nurse Practitioner at the Jail, completed the administrative health assessment. She withdrew the medications prescribed by Mr. Barbagallo's treating physicians and, exercising her judgment, substituted Flexeril and Naprosyn for seven days. Flexeril is a muscle relaxant prescribed to relieve muscle spasms resulting from injuries. Naprosyn is a nonsteroidal, anti-inflammatory

2

drug used to relieve the inflammation, swelling, stiffness, and joint pain. Anti-anxiety medication was not substituted. Ms. Diercksen did not communicate with Mr. Barbagallo's treating doctors.

Six days later, on June 27, 2002, Defendant Dr. Levy, a general practitioner, evaluated Mr. Barbagallo after Mr. Barbagallo was removed from the general prison population for agitation. Dr. Levy determined that Mr. Barbagallo was not a threat to himself or others and released him back to the general prison population.

Two days later, on June 29, 2002, Defendant Dr. Juter, the psychiatrist on call, received a page at 10:00 a.m. from a physician's assistant at the Westchester Corrections Center seeking consultation in order to treat Mr. Barbagallo. Mr. Barbagallo was reportedly in a disruptive and aggressive state. Dr. Juter prescribed Haldol and Benadryl (Haldol is prescribed for agitated patients with behavioral disturbance and disruptive behavior and Benadryl counteracts some of the potential side effects of Haldol); directed that Mr. Barbagallo be placed on close watch; directed the physician's assistant to continue to monitor Mr. Barbagallo and report back to Dr. Juter; and stated that he would evaluate Mr. Barbagallo in person at a later time.

Defendant Physician's Assistant ("PA") Nwosu treated and observed Mr. Barbagallo from 11:40p.m. on June 29, 2002 until 6:00 a.m on June 30, 2002, Mr. Barbagallo's approximate time of death. During that time, Mr. Barbagallo became agitated and combative. PA Nwosu ordered and administered the same drugs that had been used to treat Mr. Barbagallo earlier,

3

Haldol and Benadryl, and monitored the patient through the early morning hours. When security reported that Mr. Barbagallo was unresponsive, PA Nwosu came to Mr. Barbagallo's cell and determined that Mr. Barbagallo was deceased.

Mr. Barbagallo had no pulse and rigor mortis had set in, but PA Nwosu followed protocol and commenced cardio-pulmonary resuscitation ("CPR"). PA Nwosu returned to the cell minutes later and resumed CPR again. It was the practice at this Jail to continue CPR until the Emergency Medical Services arrived and the decedent could be officially pronounced dead. Mr. Barbagallo died from an acute psychotic reaction, following marked agitation with exhaustive psychosis and excited delerium.

*Deliberate Indifference:*

The Supreme Court has recognized that the intentional denial or interference with access to medical care may constitute a violation of the Eighth Amendment rights of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104-105, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). This "does not mean ... that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105, 97 S. Ct. at 291. "In order to state a cognizable claim [under the Eighth Amendment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106, 97 S. Ct. at 292.
As stated by Our Court of Appeals in *Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994), cert. denied, 115 S. Ct. 1108, 130 L. Ed. 2d 1074 (1995) in relevant part:

> The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991). *See Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (standard contemplates a "condition of urgency, one that may produce death, degeneration, or extreme pain") (citations omitted). Second, the charged official must act with a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324. Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *Hathaway citing Farmer v. Brennan*, __U.S.__ , 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994).

*Dr. Lawrence Levy*

This Court assumes, without deciding, that Dr. Levy may have been negligent in his treatment of Mr. Barbagallo and if so negligent, that this was the proximate cause of Mr. Barbagallo's death three days later. Hindsight suggests it would have been reasonable to communicate with Mr. Barbagallo's attending physicians. Negligence does not necessarily rise to a level of constitutional deprivation. There is nothing in this record that would allow a reasonable trial jury to find that Dr. Levy possessed the requisite culpable state of mind required under a deliberate indifference claim. Therefore, Defendant Dr. Levy's motion for summary judgment is granted as to the § 1983 claim.

*Dr. Selwyn O. Juter*

Dr. Juter asked the physician's assistant about Mr. Barbagallo's medical, physical, and mental states so as to ascertain what the issues were and to prescribe appropriate medication. Dr. Juter was informed by the assistant that Mr. Barbagallo was not suffering from any acute medical problems and was not then taking any medications. Dr. Juter prescribed medications

5

customarily used to treat highly agitated patients suffering from behavioral disorders. There is nothing in this record that would allow a reasonable trial jury to find that Dr. Juter possessed the requisite culpable state of mind required under a deliberate indifference claim. Plaintiff contends that Dr. Juter's failure to personally examine and observe Mr. Barbagallo after he prescribed the Haldol and Benadryl was negligent. Whether or not this is so, it would not support a claim of deliberate indifference. Therefore, Dr. Juter's motion for summary judgment as to the § 1983 claim is granted.

*Julius Nwosu*

Plaintiff has offered no facts that would support a finding that PA Nwosu possessed the requisite culpable state of mind to satisfy the subjective component of a deliberate indifference claim. He referred a psychiatric problem to the psychiatrist, and followed the telephone instructions he was given. Therefore PA Nwosu's motion to dismiss is granted.

*Other Defendants and the Medical Malpractice Claims*

Inexplicably, the other Defendants did not move for summary judgment or dismissal. The Constitutional claims against them are similar to, or derivative from, the claims presented against the movants. Therefore, they also are dismissed.

The Court declines to exercise supplemental jurisdiction over the New York State claims of medical malpractice. Therefore, the medical malpractice claims against Doctors Levy and Juta

are dismissed without prejudice.

The Clerk shall enter a final judgment.

X

       X

            X

               X

                 X

SO ORDERED.

Dated: White Plains, New York
December 13, 2005

*Charles L. Brieant*
Charles L. Brieant, U.S.D.J.